AUGUSTUS TRIMMER v. THE PENNSYLVANIA, POUGHKEEPSIE AND BOSTON RAILROAD COMPANY.

1. When a railroad company, having power to condemn land, has been permitted by the landowner to enter and lay its tracks and make improvements without compensation first made, and afterward the question of compensation arises in a suit in equity, the measure of compensation is the value of the land and damages at the time of entry, with interest. When, however, the company, under such conditions, takes a statutory proceeding to condemn such land, the measure of compensation is the value of the land and damages at the time of the appraisement.

2. In a proceeding to condemn, piers previously placed upon the land by another company are to be regarded as a part of the land itself.

---

On error to the Warren Circuit.

Argued at June Term, 1892, before Justices DEPUE, SCUDDER and REED.

For the plaintiff in error, *William S. Gummere* and *Chauncy H. Beasley.*

For the defendant in error, *Henry S. Harris.*

The opinion of the court was delivered by

REED, J. The alleged errors arose in the trial of an appeal from an award of damages made to one Trimmer, the plaintiff in error, for a taking by condemnation, by the railroad company, of a strip of land owned by Trimmer. It appeared on the trial of the appeal that, in 1882, another railroad company, known as the Pennsylvania, Slatington and New England railroad, had laid its route over the *locus in quo*. The strip of land runs to the Delaware river. The Pennsylvania, Slatington and New England railroad commenced to build piers on this ground for the purpose of supporting a railroad bridge across the river. The piers upon this land were begun in July and practically completed in October, 1882. No agreement was made by the railroad company with Trimmer for a right to build the structures upon this land, and no express license was given to the railroad company to occupy the land. An agreement for compensation was proposed during the progress of the work upon the piers, but it fell through by reason of a difference between the parties as to its terms. The Pennsylvania, Slatington and New England railroad at this point disappears from the case.

. In 1889 the Pennsylvania, Poughkeepsie and Boston Railroad Company proceeded to condemn the same strip of land over which the first-named company had located its route and had erected the piers. It is from the award made by the commissioners in this condemnation proceeding that the appeal tried below was taken. Upon the trial of this appeal the question arose whether the value of these piers should be regarded by the jury in estimating the value of the land taken by the railroad. The trial court directed the jury to disregard the existence of the piers in making up their assessment of the value of the land and of the damages. It appears from the remarks of the justice in his charge, that he regarded the condemning company as a successor to the preceding company which had built the piers, and he concluded that the owner of the land had tacitly permitted the former company to enter upon the land without first making compensation, and to pro-

ceed with the construction of these structures. Holding this view of the case, the justice applied the rule laid down in the case of *North Hudson County R. R. Co.* v. *Booraem,* 1 *Stew. Eq.* 450. The rule is there stated in the following words: " Where a railroad company, having power to condemn lands for its use, has been permitted by the owner to enter into possession and construct its track upon the premises without compensation first made, in a subsequent proceeding to condemn, the measure of compensation is the value of the land and damages at the time of entry, and interest from such entry irrespective of the improvements afterwards put upon it by the company." In the case just mentioned the North Hudson County Railroad Company, which had gone into possession under a parol contract to purchase, took proceedings under its charter to condemn. The award excluded the value of structures which had been placed upon the land by the railroad company. It included the value of the land at the date of the company's entry and damages, together with interest from that time. Against the objection of the landowner, that he was entitled to the value of the lands and improvements as they existed at the time of the award of the commissioners, the Court of Appeals held that the rule for the ascertainment of the damages adopted by the commissioners was correct. In the late case of *Leeds* v. *The Camden and Atlantic R. R. Co.*, 24 *Vroom* 229, a like question arose. The Camden and Atlantic Railroad Company had entered, built its tracks and occupied a strip of land for over thirty years, with the consent of the landowner. Upon proceedings to condemn the land taken by the company, it was held by the Court of Errors that the rule that should have been adopted in that case was, not to regard the value of the land at the time of the entry (which was nominal), with interest, but to estimate the value of the land at the time of the award of the commissioners, which value had become very great. The rules laid down in the respective cases are apparently irreconcilable. The difference, however, arises from a distinction taken in the later case between a proceeding to condemn, considered as a purely

legal proceeding, and a proceeding in an equitable suit to ascertain the damages which the landowner has sustained by reason of the appropriation of his land. In equity, when a corporation having power to condemn has been let into possession by the landowner and makes improvements, the court will adjust the claims of the landowner upon the basis laid down in the Booraem case. The court will, by means of a reference to a master, ascertain the damages to the landowner according to this standard of compensation. In the Booraem case the award of the commissioners, although made upon an erroneous legal principle, was in conformity with the equitable rule, and so was permitted to stand in place of a report of a master to whom a reference might have been made. If the question of compensation had not been drawn into a court of equity by the foreclosure of a mortgage covering the land condemned in addition to other land, the rule adopted by the commissioners in that case would have been inaccurate.

The result of these conflicting rules seems to be, that if a corporation, under the conditions mentioned, takes proceedings to condemn lands, the legal rule applies; but if the question of the value of the land becomes involved in a suit of equity, the equitable rule applies. So if, under these conditions, the owner brings an action of ejectment to dispossess the company, a court of equity will stay the action upon payment of damages ascertained in conformity with the equitable rule. *Trenton Water Co.* v. *Chambers*, 1 *Stockt.* 471 ; *S. C.*, 2 *Beas.* 199.

It, therefore, seems that in the present case, which is a purely legal proceeding to condemn, unentangled with any equitable proceeding, the rule laid down in *Leeds* v. *Camden and Atlantic R. R. Co.*, *supra*, must prevail. It follows that the land, with the piers upon it, as it existed at the time of the commissioners' award, should have been regarded by the jury in making an estimate of its value.

But, aside from this view of the case, there is another aspect which renders the equitable rule inapplicable. It does not appear that the Pennsylvania, Poughkeepsie and Boston Railroad Company entered and held possession of the *locus in quo*

by the permission of the landowner, nor does it appear that the defendants in error succeeded to the rights of any railroad company that had so entered. So far as appears, the piers were placed upon the land by a trespasser.

Judgment reversed.